IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TINA B.,[1] | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:21-cv-00212 |
| | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) |
| | ) |
|         **Defendant.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Tina B. ("Tina") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Tina alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess her allegations regarding her symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 23).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Tina failed to demonstrate that she was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Tina filed for DIB on October 30, 2018, claiming her disability began on August 15, 2017, due to bipolar disorder, lupus, anxiety, and depression. R. 175. Tina's date last insured was December 31, 2022. R. 17. Thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Tina's applications at

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

the initial and reconsideration levels of administrative review. R. 56–69, 70–83. On October 21, 2020, ALJ David Lewandowski held a telephonic hearing to consider Tina's claim for DIB. R. 35–52. Counsel represented Tina at the hearing, which included testimony from vocational expert Robert Jackson. On November 10, 2020, the ALJ entered his decision analyzing Tina's claims under the familiar five-step process[3] and denying her claim for benefits. R. 15–29.

  The ALJ found that Tina was insured at the time of the alleged disability onset and that she has not engaged in substantial gainful activity since her alleged onset date. R. 17. The ALJ found that Tina suffered from the severe impairments of osteoarthritis of the hips, knees, hands and feet, back pain, left fifth metatarsal fracture, and bipolar disorder. Id. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 19–22. The ALJ found that regarding her mental impairments, Tina had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace, a mild limitation in adapting or managing oneself, and no limitation in understanding, remembering or applying information. Id.

  The ALJ concluded that Tina retained the residual functional capacity ("RFC") to perform light work, except that she can frequently perform fingering. She is able to understand, remember, and apply simple instructions and perform simple tasks. She can concentrate for two-hour segments. She can have occasional interaction with coworkers and supervisors, but no

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

interaction with the public. She would be off task 10% of the workday. R. 22. The ALJ determined that Tina is unable to perform any of her past relevant work, but she could perform jobs that exist in significant numbers in the national economy, such as cleaner, marker, and router. R. 29. Thus, the ALJ determined that Tina was not disabled. Id. Tina appealed the ALJ's decision, and the Appeals Council denied her request for review on February 8, 2021. R. 1–6.

## ANALYSIS

Tina alleges that the ALJ failed to properly assess her allegations regarding her symptoms.

### A. Medical History Overview

1. Medical Treatment

Prior to and after the alleged onset date, Tina received treatment from Himanshu Patel, M.D., Laura Cook, PA, and Molly Sharp, PA-C at the Center for Emotional Care ("CEC") for psychiatric medication management. The CEC providers noted that Tina was appropriately dressed and groomed, and cooperative and that while she had a variable mood that ranged from euthymic to depressed, anxious, labile, and irritable, her other mental status examination findings were normal. See R. 405, 407, 410, 414, 416, 428, 443, 455, 666–67, 669, 672–73, 675, 679, 682, 684, 688, 690–91, 694, 696–697, 700. Tina's thought process, thought content, immediate memory, recent memory, and remote memory were regularly within normal limits. Id. Occasionally, the providers noted that Tina had partial or limited judgment and insight, or limited attention and concentration. See, e.g., R. 410, 424, 434.

At a follow-up visit in February 2017, Tina reported that she was "back to herself" and felt better with her mood and anxiety improved and response to her medication was "good." R. 445. At her March 2017 visits, Tina was tearful and reported that she was doing poorly, had

increased panic attacks from being in a crowd, and problems with work productivity. R. 439, 442. Ms. Cook noted that Tina's mental complaints are in response to personal triggers, thus her mood and anxiety worsened due to her employment stressors and inability to be productive. Id. On June 9, 2017, Christy Arthur, M.D. noted that Tina appeared hypomanic. R. 357. At August 2017 follow-up visits, Ms. Cook and Dr. Patel noted that Tina's anger improved and her medications were working better, but her anxiety was the same. R. 409, 416. Tina also reported that she was worried about her memory and cannot remember how to do her job. R. 409, 413, 421.

On January 11, 2019, Tina resumed her mental health treatment at the CEC after she stopped coming to visits for a year and half and stopped taking her medications for two years. R. 580. Tina reported that she was battling chronic depression and anxiety, had been homebound for almost a year, and had panic attacks when she left the house. Id. From 2019 to 2020, Tina's monthly mental examination findings included a variable depressed, anxious, irritable or euthymic mood with limited attention and concentration. R. 568, 571–72, 575, 578, 581, 716, 719, 721, 723, 726, 841, 844, 848, 854, 860, 865, 868, 871. At her February and March 2020 visits, Dr. Patel noted that Tina's anger improved, her anxiety was the same, and her mood worsened due to the recent death of her sister. R. 856, 859. Tina was alert and oriented without signs of mood, thought, or memory difficulty and reported at her April 2020 visit with Dr. Arthur that she was doing well with respect to her bipolar disorder and medications. R. 746.

From November 2019 to August 2020, Tina attended eight therapy appointments with Jillian McCray, MA. ED., LPC to manage behaviors related to her bipolar disorder with episodic depression and anxiety. R. 739. Ms. McCray noted that during therapy, Tina exhibited social anxiety, aggression, insomnia, depressive episodes, obsessive thoughts, and heightened fear of

having a break down, such that she had struggles coping, socializing, processing, maintaining insight into her behaviors, and following through with self-care activities. Id.

Regarding her physical impairments, on July 8, 2017, Tina visited Serge Guillaume, M.D. complaining of hip pain. R. 553. Dr. Guillaume noted that Tina had pain on palpation of the right greater trochanter, and classic tenderness over the right trochanteric bursa. R. 554. On August 18, 2017, Tina saw Jennifer Jackson, LPN and complained of bilateral hip pain that worsened over the past few months and exacerbated her mania. R. 338. Ms. Jackson noted that Tina had tenderness to palpitation over the trochanteric bursa bilaterally, but full range of motion in the hips, full strength, and a normal gait. R. 340. Ms. Jackson prescribed Lidoderm patches and recommended taking Tylenol as needed and to avoid laying on the affected side. R. 341. On September 13, 2017, Tina spoke with Tiffany Tuemler, CMA and complained of hip pain despite lidocaine patches. R. 334. Ms. Tuemler denied Tina's hip pain as lupus.

On July 28, 2017, Tina's laboratory results revealed a positive antinuclear antibody (ANA) test, but she became tearful and left without completing the examination with Belinda Williams, LPN to determine whether she has an auto-immune disease. R. 348–49. At a December 2018 visit, Dr. Arthur noted that despite the positive ANA test, Tina did not have joint problems. R. 596.

Tina went to the emergency room on August 2, 2017 with complaints of chest pain and shortness of breath. R. 344. Her EKG was normal, but Dr. Arthur noted that Tina has dyspnea on exertion and ordered a CT scan of her chest. R. 346. At her August 29, 2017 follow-up visit, Dr. Arthur noted that Tina had normal physical examination findings and normal memory, concentration, interest, and interactions and that she was "much less irritable" with more insight and normal judgment. R. 337.

On December 5, 2018, Tina visited Dr. Arthur with complaints of ankle and knee pain, in which the doctor determined that Tina had no musculoskeletal, neurological, or psychiatric examination abnormalities. R. 596. On September 26, 2019, she complained to Dr. Arthur about her hand, feet, left forearm, and right lower back pain. R. 778. Dr. Arthur found that Tina has decreased forward flexion due to severe pain. R. 781. Tina saw Dr. Arthur on October 28, 2019 regarding her foot and hand pain, in which Dr. Arthur noted that she had generalized tenderness and a history of rheumatoid arthritis. R. 766–69. At her October 2019 and January 2020 visits, Dr. Arthur noted tenderness during Tina's musculoskeletal examination, specifically along the right sternal border and into the lower ribs. R. 758. Dr. Arthur also noted that Tina had a normal range of motion, normal gait and posture, normal range of motion in the neck and shoulders without pain, normal musculoskeletal and neurological examination findings including full strength in all extremities, and no other noted abnormalities. Id. At her April 29, 2020 visit, Dr. Arthur determined that Tina's hand and foot pain was due to osteoarthritis and "nothing has made [her chronic back pain] better or worse." R. 746.

On June 9, 2020, Tina visited Wilton Kennedy, PA-C to address her left foot pain that persisted for three weeks. R. 736. Mr. Kennedy noted that Tina had edema of the left metatarsals and limited range of motion in the left foot due to a fracture of the mid shaft of the fifth metatarsal. Mr. Kennedy also noted that Tina's physical examination indicated normal strength, normal motor skills, intact sensation, normal gait, and normal soft tissues. R. 737. He referred Tina to a podiatrist and prescribed her diclofenac medication. Id.

2. Medical Opinions

On June 19, 2019, Thomas Phillips, M.D., a state agency physician, found that Tina did not have a severe physical impairment. R. 59–61. On reconsideration on November 12, 2019,

Richard Surrusco, M.D., reviewed Tina's medical records and found that she was able to perform medium exertion work but with occasional and frequent lifting and carrying of twenty-five pounds, no more than six hours of standing and/or walking or sitting in an eight-hour workday. R. 77–78. The ALJ found the opinions of the state agency physicians not persuasive, as the record demonstrates additional limitations. R. 27.

On June 19, 2019, Daniel Walter, Psy.D., a state agency psychologist found that Tina had no restrictions in understanding, remembering, or applying information; moderate restrictions in interacting with others; moderate restrictions in concentrating, persisting, or maintaining pace; and mild restrictions in adapting or managing oneself. R. 62–65. Dr. Walter also found that Tina had moderate limitations in the ability to perform detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work around others without being distracted, completed normal workday and work week without psychological interruptions, perform at a consistent pace without an unreasonable number and length of rest periods, interact with the public, except instructions and respond appropriately to criticism, and travel in unfamiliar places or use public transportation. Dr. Walter determined that Tina retained the ability to perform simple, routine work and focus for two-hour intervals, with limited social interaction. R. 64–65. Similarly, on reconsideration, Richard Luck, Ph.D., found that Tina could perform simple, routine work with limited social interaction. R. 80. The ALJ found the opinions of the state agency psychologists persuasive as they were supported by evidence on the record and consistent with the overall record. R. 27.

### B. Subjective Allegations

Tina asserts that the ALJ failed to properly evaluate her subjective allegations regarding her mental impairments, including the failure to explain the connection between her daily activities and her ability to engage in sustained work activity. Pl.'s Br. at 11–16, Dkt. 22. Tina does not identify any subjective complaints that the ALJ failed to consider. Nor does Tina identify specific instances in this case where the ALJ improperly applied the legal standards. Rather, Tina asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.


Tina's effort to apply <u>Arakas</u> to this case is unavailing. In <u>Arakas</u>, the plaintiff experienced pain from a condition that did not create objective findings, and the Fourth Circuit found that the ALJ erred by relying on the absence of such findings to discount the plaintiff's subjective statements. <u>Arakas</u>, 983 F.3d at 95. Here, the ALJ did not rely on the absence of objective medical evidence.[4] R. 22 (the ALJ acknowledging that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine [Tina's] symptoms limit the ability to do work-related activities"). Instead, the ALJ recognized that Tina's subjective statements about the intensity of her symptoms and their effect on her ability to work were inconsistent with the medical evidence. R. 23–25. Further, the ALJ properly noted that Tina's hobbies and daily living activities of watching tv, household activities, prepare meals, driving, go out alone, online shopping, and paying bills supported his conclusion that her subjective complaints were inconsistent with the evidence on the record. R. 20–21, 23; <u>See</u> <u>Walker v. Saul</u>, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W. Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including [c]laimant's daily activities). <u>Cf.</u> <u>Arakas</u>, 983 F.3d at 97 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.").

Contrary to Tina's argument that the ALJ "gave only a boilerplate recitation" in assessing her complaints (Pl.'s Br. at 12), I find that the ALJ thoroughly acknowledged and assessed her subjective allegations. Regarding her mental impairments, the ALJ explicitly acknowledged

---

[4] Unlike <u>Arakas</u>, the medical record here included extensive objective findings, which the ALJ documented in his review of the medical evidence and in his analysis.

Tina's function reports that she did not spend time with others, gets agitated when around people, and has tendency to stay to herself. R. 20. Specifically, the ALJ pointed to the differences in function reports. In her first function report, Tina indicated that her conditions affected her ability to talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. However, in her second function report, Tina only noted issues with concentrating and getting along with others, which was consistent with her husband's third party function report. R. 23. The ALJ noted that while Tina's objective medical examination noted routine mood and affect issues, more recent reports indicated an euthymic mood and appropriate affect. R. 25. The ALJ also noted that Tina interacted normally with all practitioners, who often noted that she was cooperative and not in distress. The ALJ further noted that despite her reports of difficulty leaving the house she went to the hair salon and had never been fired due to problems getting along with others. R. 20, 25. Therefore, the ALJ found that Tina had a moderate limitation in interacting with others and adequately accommodated Tina's complaints of irritability, variable mood, and isolationist tendencies by limiting her to occasional interaction with coworking and supervisors, but no interaction with the public. R. 20.

  Moreover, the ALJ explained that Tina did not complain of serious difficulty maintaining concentration, persistence, or pace to practitioners and her treating and examining practitioners did not observe that Tina was overly distractible or slow finding her alert and oriented with intact memory and fund of knowledge. R. 21, 25. The ALJ also acknowledged that her psychiatry treatment notes included observations of limited attention and concentration and varying levels of insight and judgment. Thus, the ALJ accommodated Tina's complaints of concentration difficulties by limiting her to simple instructions and simple tasks, concentration in two-hour segments, and assessed that she would be off task 10% in an eight-hour workday due to her

moderate limitation in concentration. Id. The ALJ concluded that the evidence does not support any limitation to persistence or pace. Id. Further, the ALJ explained that Tina has only a mild limitation in adapting or managing herself as she did not usually complain about these problems. The medical notes show that she had no hygiene deficiencies and wore appropriate attire, and had no problems being aware of normal hazards and taking appropriate precautions. Tina could drive a car and go out alone, and had no problems independently making plans and setting goals. Finally, the ALJ noted that Tina handled her own activities of daily living without significant assistance from others. Id.

Regarding her physical impairments, the ALJ further reasoned that while the record showed some complaints of arthritis, medical treatment notes of tenderness, and reduced range of motion in her lumber spine, Tina's gait, strength, and sensation were routinely intact. R. 25, 27. The ALJ accommodated for Tina's subjective complaints about her physical impairments. The ALJ stated that "[d]ue to [Tina's] complaints of multi-joint osteoarthritis, back pain, and recent left metatarsal fracture," he restricted her to light work. R. 26. The ALJ also explained that he limited Tina's fingering to frequent, instead of constant, due to her complaints of hand swelling with increased activity and when she "tried to do too much." R. 23, 26. In short, the ALJ found the opinions of the state agency physicians not persuasive, and limited Tina to light exertional work with frequent fingering, due to her multi-joint osteoarthritis and complaints of chronic back pain. R. 27.

Unlike the ALJ in Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017), the ALJ did not rely on minimal daily activities for the finding of non-disability, but used Tina's daily activities as a factor in his assessment of Tina's subjective allegations. See Ladda v. Berryhill, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) (("the ALJ cited [the claimant's] daily

activities for purposes of the credibility determination and *not* as examples of the functions [the claimant] could perform for an entire day." (emphasis added)). The ALJ properly reviewed Tina's medical history and her subjective allegations and explained his conclusion that Tina's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical and other evidence in the record. R. 22–27. The ALJ outlined Tina's testimony of knee, joint, feet, and back pain, hand swelling, and allegations of difficulty interacting with others due to her mental impairments including anxiety, anger, and irritability. R. 19–24. However, the ALJ concluded that Tina could perform light exertional work with certain limitations, and explained that the "residual functional capacity assessment is supported by the objective medical evidence, the claimant's daily activities, and the opinion of the State agency psychologists." R. 27. Hence, the ALJ cited Tina's daily activities as only one factor supporting his determination that Tina's subjective complaints were not entirely consistent with the evidence of record.

Further, the ALJ properly considered the connection between Tina's daily activities and her ability to engage in sustained work activity. The ALJ explained that despite Tina's mental impairments and subjective complaints, Tina was able to engage in a variety of activities without a deterioration in functioning and she did not require emergency room treatment or inpatient hospitalization. R. 20–21. Thus, the ALJ determined that despite Tina's mental impairments and complaints, her records reflected that "she is able to concentrate for two-hour segments, and would be off task 10% of the workday due to her moderate limitation in concentration," however, "the evidence does not support any limitation related to persistence or pace." R. 21. The ALJ found persuasive the opinions of the state agency psychology consultants that Tina could perform sustained work activities as the opinions were supported and consistent with

13

evidence on the record. R. 26–27. Specifically, the state agency psychology consultants found that Tina retained the ability to perform simple, routine work and focus for two-hour intervals, with limited social interaction since she can maintain concentration and attention for extended periods, perform activities within a schedule, be punctual within customary tolerances, work around others without being distracted, complete normal workday and work week without psychological interruptions, and perform at a consistent pace without an unreasonable number and length of rest periods. R. 27. Thus, the ALJ considered Tina's subjective complaints and explained his conclusion that Tina could sustain work for an eight-hour day despite her mental impairments.

Though Tina disagrees with the ALJ's analysis and conclusions, she does not identify any material conflicting evidence that the ALJ failed to consider or any material misstatement of the evidence of record. Rather, Tina simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that substantial evidence supports the ALJ's opinions of Tina's subjective complaints, and that she can perform work within the prescribed RFC.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** entering an order **AFFIRMING** the final

decision of the Commissioner, **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 1, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge